IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JOHN ALLEN SHABAZZ, ) | |
| ) | |
| Plaintiff ) | No. 12-CV-50355 |
| ) | |
| v. ) | Hon. Iain D. Johnston |
| ) | |
| JEFF HALL, ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM AND ORDER**

     Plaintiff John Allen Shabazz sued correctional officer Defendant Jeff Hall alleging Defendant used excessive force while returning Plaintiff to his cell during a lockdown at the Winnebago County Jail. At trial, a jury found in favor of Defendant. Plaintiff now brings this motion for a new trial [Dkt. 115] based on alleged errors which occurred during jury selection. Plaintiff's motion is denied for the reasons detailed below.

**FACTS**

     During jury selection, the Court relied heavily on the proposed *voir dire* questions submitted by attorneys for both parties. The alleged errors in *voir dire* pertain to juror number one (M.F.), and the two replacement jurors (R.L. and the final juror) called after Plaintiff removed juror number five and eight using peremptory challenges.

     The first portion of *voir dire* Plaintiff calls attention to regarding M.F. follows:

THE COURT: Okay. All right. Do you have any family members or close friends who are employed by law enforcement?

M.F.: I do not. Oh, wait. Yes, I'm Sorry. My nephew Ryan is a correctional officer in the Dixon prison.

THE COURT: Okay. Do you talk to him about his job at all when you see him at family functions?

M.F.: I don't see him very much at all because he lives in Dixon.

(Ex. 1, 2/11/15 *Voir Dire* Tr. At 17:6-16).

1

Plaintiff did not raise any concerns when M.F. first mentioned her nephew, and he declined the Court's invitation to ask follow up questions after the Court finished its line of questions for M.F. After eight potential jurors had been questioned the Court called a sidebar during which it declared that none of the venire would be dismissed for cause. Plaintiff's counsel then raised for the first time a concern about M.F.:

> MR. HANNA: Well, your Honor, we should have raised this earlier, but with respect to juror number one, she has a nephew working at Dixon right now. Obviously, that's where Mr. Shabazz is currently being held. So, I guess if the time window has passed, it's passed, but I would ask if we could ask one more question. How much she talks to her nephew at Dixon about his experiences there and what she knows about his work as a correctional officer. If you'd ask that question to let us know whether we can make a for cause objection, number one. If she answers that they don't talk about it, if it's an issue that they don't discuss or topic they don't discuss, we might not move to strike at all.
>
> THE COURT: Okay. Well, lets talk about for cause at this point.
>
> MR CARPENTER: I thought you asked her if she talks to her nephew, and she said no.
>
> THE COURT: She said no. There's no follow-up. And he's not currently housed there and that's why I specifically asked do you talk to him, and she said no.
>
> MR. BORICH: I actually missed that.
>
> THE COURT: Okay. So, I'm not going to strike her for cause. And she did say that. Okay.
>
> (Ex. 1 at 82:4-25, 83:1-4).

After this exchange, the Court asked once again if Plaintiff wanted to use a peremptory strike on M.F., Plaintiff declined. M.F. served on the jury.

The second aspect of *voir dire* that Plaintiff claims as error pertains to juror R.L. and conversations he had with his fiancé's close friend who works as a corrections officer in Wisconsin.

> THE COURT: Do you have any conversations with him at any time about his job?
>
> PROSPECTIVE JUROR: Just the normal ones that you have like what's the craziest things that happened to you, you know, kind of things.
>
> THE COURT: I'm not going to go into that in detail right now. Anything about those discussions with that person that would affect your ability?

>PROSPECTIVE JUROR: I would like to say no, you know.
>
>THE COURT: Well, I know you'd like to say. I'd like to win the lottery tonight. What do you think?
>
>PROSPECTIVE JUROR: I would have to go with no.
>
>THE COURT: You think it might cause you some – do you think it would cause you --
>
>PROSPECTIVE JUROR: I don't think it would. I think – I would assume I'd be able to stay impartial.
>
>(Ex. 1 at 91:21-25, 92:1-11).

R.L. then stated that he could follow jury instructions regarding the amount of force correction officers may use, even if he did not agree. After the Court finished its questioning, Plaintiff's counsel asked again about the corrections officer in Wisconsin and what questions R.L. asked him.

>PROSPECTIVE JUROR: Yeah. So, just, you know, the normal questions, I guess, socially when I find out somebody's a corrections officer, just hey, what kind of crazy things do you encounter day to day and, you know, what's the craziest stuff that's happened to you, those kinds of stories.
>
>MR. BORICH: So, those crazy stories probably involved interactions between him and inmates that happened at the facility?
>
>PROSPECTIVE JUROR: Correct.
>
>MR. BORICH: Can you provide an example maybe or –
>
>PROSPECTIVE JUROR: Just some of the – they're not very polite. They're not for polite society, you know. So just some things that he had encountered with behaviors from – you know, from inmates.
>
>(Ex. 1 at 95:9-22).

Plaintiff then moved to have R.L. dismissed for cause and the Court denied this request because:

>THE COURT: First of all, it wasn't a close personal friend. It was the friend of his fiancée, who he was at a wedding at, and he's talked to him a couple times about, quote, the craziest things he's seen. I followed up and said could you be fair. He said he thought he could be. I followed up again and said can you be fair, and he

3

said he could be. So, I'm not going to strike him for cause. You want to use your last peremptory on him?

(Ex. 1 at 103:24-25, 104:1-6). Plaintiff then used his last peremptory challenge on R.L. The last juror was then questioned by the Court and neither party's counsel raised any concerns or moved for his dismissal. He sat on the jury.

## **CONTENTIONS**

Plaintiff now contends that the Court erred in questioning M.F. by limiting the scope of certain questions and by not allowing Plaintiffs question M.F. adequately to reasonably assure that any potential bias was discovered. Furthermore, Plaintiff argues that Defendant's summation of earlier portions of dialogue between M.F. and the Court ("I thought [the Court] asked [M.F.] if she talks to her nephew, and she said no") (Ex. 1 at 82:22-23) was an 'argument' which the Court accepted "over the objection of Plaintiff's counsel." (Dkt. 116, at 3).

In response, Defendant argues that there is no evidence that M.F. was biased in any way and that Plaintiff ignores the context in which the *voir dire* questioning took place. The conversational nature of *voir dire* is informal and the Court's questions and M.F.'s answers were satisfactory to allow for the discovery of any potential bias. The Court asked her numerous questions about impartiality in the context of law enforcement, corrections officers, and her ability not to prejudge either party based on their relative positions as an inmate and correction officer.

Plaintiff also raises several arguments concerning the questioning of R.L. First, Plaintiff asserts the Court did not allow R.L. to go into detail and share stories he may have heard from his fiancé's friend who works as a correctional officer in Wisconsin. Second, he asserts that the Court should have excused R.L. for cause. Third, he argues that his resulting use of a peremptory challenge harmed him, despite R.L.'s not having sat on the jury, because he claims her would have used his last peremptory on another juror.

Defendant disputes that R. L. should have been removed for cause and argues that because R.L. did not sit on the jury, Plaintiff cannot show any resulting harm. Furthermore, Defendant contends that the reasons Plaintiff now gives for wanting the final juror excused are inadequate. Lastly, Defendant notes that Plaintiff failed to make any record of his concern over the final juror seated. As a result, Plaintiff waived any right to now argue harm by using a peremptory challenge on R.L., thereby allowing the final juror sitting on the jury.

## **ANALYSIS**

Federal Rule of Civil Procedure 59 authorizes the Court, on motion, to grant a new trial after a jury trial, for any reason for which a new trial has heretofore been granted in a suit in equity in federal court. Fed. R. Civ. P. 59(a)(1)(A). Trial courts are granted wide discretion in deciding a motion for a new trial. *United States v. McClinton,* 135 F.3d 1178, 1186 (7th Cir.1998). The Court must determine whether Plaintiff was given a fair trial. This determination is subject to the harmless error standard governed by Federal Rule of Civil Procedure 61. Any error by the Court or a party is considered harmless and is not grounds for granting a new trial, unless justice requires otherwise. Fed. R. Civ. P. 61. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights. *Id*. The party

4

challenging the Court's discretion to keep or remove a juror bears the burden of proof. *See Griffin v. Bell*, 694 F.3d 817, 821 (7th Cir. 2012).

*Voir dire* protects the parties' right to a fair trial by "exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). The jury selection process allows the Court and the parties' attorneys an opportunity to narrow the field of the venire and dismiss jurors who hold sufficient biases so that they cannot decide the case based on the evidence alone. *Id*. All challenges for cause, whether to the array or panel or to individual jurors, shall be determined by the court. 28 U.S.C.A. § 1870. Jurors can be rejected for "narrowly specified, provable and legally cognizable basis of partiality." *Swain v. Alabama*, 380 U.S. 202, 220 (1965). These specified categories where a juror's partiality is admitted or presumed are narrowly confined to relationships (with parties, attorneys, or witnesses), pecuniary interests, or clear biases of a prospective juror. *See* 9-47 Moore's Federal Practice –Civil § 47.20[1] (2015). Prospective jurors should be dismissed for cause when their responses to questioning "reveal a bias so strongly as to convince the judge that the juror cannot render impartial jury service." *United States v. Brodnicki*, 516 F.3d 570, 574 (7th Cir. 2008).

The decision of a trial judge to dismiss a juror for cause is given deference. *Id.* There are also instances where "hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges." *Id.* In civil cases, each party shall be entitled to three peremptory challenges. 28 U.S.C.A. § 1870. Peremptory challenges may be used for any reason at all, so long as the use is related to the outcome of the case, and the reason does not violate Equal Protection Clause rights. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986).

## I. THE COURT ALLOWED ADEQUATE QUESTIONING OF JUROR M.F. AND THE JURY WHICH SERVED AT TRIAL WAS IMPARTIAL

Plaintiff claims that the Court did not allow for adequate questioning of juror M.F. thereby violating his right to an impartial jury. Plaintiff attempts to analogize the instant case with *Art Press v. Western Printing Mach. Co.,* 791 F.2d 616 (7th Cir. 1986). In that case the purchaser of a paper cutting machine, Art Press, brought a warranty action against manufacturer, Western Printing Machinery Company. *Id*. at 617. A jury awarded the plaintiff $94,709.10 in damages and the manufacturer appealed, arguing that the district court unduly restricted the *voir dire* of the venire persons. *Id.* The Seventh Circuit vacated and remanded the verdict on the grounds that the district court failed to conduct a deep and detailed enough *voir dire* "so that the parties ha[d] a basis for an intelligent exercise of the right to challenge, whether for cause or peremptorily." *Id*. at 618.

The facts of *Art Press* and the instant case are quite distinct. In *Art Press,* attorneys for both parties requested that the jurors be asked about their level of education. The trial judge, however, refused to engage in this line of questions, stating that he did not want to "drag out in public the deficiencies of their education." *Art Press*, 791 F.2d at 617. The judge only asked the venire five "stock questions" including: their name, address, and prior jury service; their employer or occupation; their familiarity with either party or their counsel; if they, or their immediate family or friends had been employed in the printing or machinery business; and if they felt they could be impartial. *Id.* Furthermore, the judge did not allow either attorney to ask any follow up questions. *Id.* Crucial to the Seventh Circuit's holding in *Art Press* is that these

"stock questions" permitted "no inquiry designed to elicit the venire persons' attitudes toward the general nature or particular facts of the case." *Id*. Plaintiff argues that 'most' of the Court's questions in the instant case addressed the 'same subjects' as the questions asked in *Art Press* and that the Court questioned the potential jurors here only "somewhat more extensively." (Dkt. 116 at 6).

In sharp contrast, here the Court asked M.F. roughly fifty questions, many of which were written by the parties' attorneys. The Court also based the questions and follow up questions on specific facts of the case, especially the relative positions of the Plaintiff as an inmate and the Defendant as a correctional officer.

> THE COURT: Now, you'll be instructed at the end of the case about how much force a law enforcement officer is allowed to use as a correctional officer. Will you be able to follow that instruction of law even if you disagree with it?
>
> and
>
> THE COURT: Alright. And just as we don't prejudge people based upon their race or national origin or religion and those types of considerations, we don't prejudge law enforcement, and we don't prejudge people just because they're an inmate. Will you be able to set aside any personal beliefs in that regard?

(Ex. 1 at 19:16-19, 20:20-25). The Court here specifically asked M.F.: "Mr. Hall is a correctional officer, and Mr. Shabazz was an inmate. Would that affect your ability to be fair and impartial in any way?" (Ex. 1 at 19:21-23). The Court also asked M.F. "can you promise me that you'll give the parties fair consideration in this case?" (Ex. 1 at 21:20-21). These questions are far from "stock questions" and illustrate that the Court inquired far more thoroughly than the trial judge in *Art Press*. Plaintiff now argues that the specific wording of a few particular questions were too narrow. However, the manner in which the Court asks a particular question is within its discretion because it has had the "opportunity to assess the credibility and demeanor of the potential jurors during voir dire." *Brodnicki*, 516 F.3d at 574. Similarly, as Defendant notes, *voir dire* should be understood in context. *Voir dire* is a dialogue between the Court and prospective jurors, who are laypeople. Prospective jurors are not prepared to have a dialogue akin to one between attorneys or between an attorney and the Court. Accordingly, the Court's approach and style of asking questions is given deference.

Plaintiff also points to *Darbin v. Nourse*, 664 F.2d 1109, 1115 (9th Cir. 1981) as support for the assertion that M.F. was not adequately questioned about her relationship and communications with her nephew. In *Darbin*, the court found that "[t]he existence of family relationships between prospective jurors and law enforcement was sufficient in itself to require that those jurors be questioned regarding the weight they would give the testimony of law enforcement officers." *Id.* at 1115. The Court's questions above show that it did consider the relationship of the jurors with law enforcement officers and inquired into the weight the jurors would give to the testimony of law enforcement. Furthermore, the Seventh Circuit has held that "a juror's mere relationship to law enforcement officer is insufficient to strike for cause." *United States v. Nururdin*, 8 F.3d 1187, 1190 (7th Cir. 1993). Accordingly, the number and nature of questions the Court asked M.F. were sufficient to discover any potential bias, and the Court finds that it adequately questioned M.F. within its discretion.

Plaintiff now argues that the Defendant incorrectly and inaccurately recounted what the Court and M.F. had previously said ("I thought [the Court] asked [M.F.] if she talks to her nephew, and she said no") (Ex. 1 att 82:22-23) was an "argument," which the Court accepted "over the objection of Plaintiff's counsel." (Dkt. 116, at 3). Defendant's recounting of the previous dialogue between the Court and M.F. was not an argument, but rather his understanding of the plain meaning of the conversation. The Court, in the best position to assess the demeanor of a juror, agreed sufficiently with that plain meaning. Plaintiff also argues that this occurred over the "objection of Plaintiff's counsel." (Dkt. 116, at 3). However, at no point during *voir dire* or at trial did Plaintiff formally object or call attention to this issue. Plaintiff's counsels did not seek to have the previous statements read from the record; nor did they state that they believed Defendant's counsel's summation of the conversation between the Court and M.F. on this matter was argumentative, inaccurate, or misleading. Instead, Plaintiff's counsel merely said "I missed that" (Ex. 1 at 83:2) and "I didn't catch that she didn't talk to him." (Ex. 1 at 82:23-24). This language is vague and surely does not suffice to constitute an objection.

Accordingly, the Court was within its discretion in not dismissing M.F. for cause. Additionally, the Court allowed for adequate questioning of M.F. and both parties were allowed a basis on which to intelligibly move for cause and exercise their peremptory challenges.

## II. THE COURT ALLOWED ADEQUATE QUESTIONING OF R.L. AND HE SHOULD NOT HAVE BEEN DISMISSED FOR CAUSE

As with M.F., the Court was within its discretion in not dismissing R.L. for cause merely because he had spoken to his fiancé's friend about his experiences as a correctional officer in another state. Even if the experiences were "crazy" and "not for polite society," the Seventh Circuit has established that:

> A prospective juror does not come to the courtroom as a *tabula rasa*. The important question is whether the juror can put aside the experiences and beliefs that may prejudice his view of the case and render a verdict based on the evidence and the law.

*United States v. Taylor*, 777 F.3d 434, 441 (7th Cir. 2015), *see also Thompson v. Altheimer & Gray,* 248 F.3d 621, 625–26 (7th Cir.2001). Plaintiff inflates the importance and impact of R.L.'s prior conversations with a correctional officer. Plaintiff does this by analogizing the instant case to *United States v. Gonzales*, 214 F.3d 1109 (9th Cir. 2000). In that case, Gonzales was charged with distribution of cocaine. The juror, who was not removed for cause, told the court that her ex-husband-- the father of her daughter-- had used and sold cocaine. *Id*. at 1113. She went on to say that her former husband's drug dealing and drug use was a factor in their, relatively recent, painful divorce and the breaking-up of her family. *Id.* The appellate court determined that the juror should have been dismissed for cause because she was unable to affirmatively state that she could be impartial. *Id.* Here, R.L. lacks a similar close relationship, or painful personal experience. In *Gonzales*, the juror's life was significantly affected by the use and sale of cocaine, the same charge being brought against the defendant in the case. She was not in the same position to put aside her experiences and beliefs in the same way that R.L. was. Despite Plaintiff's contentions, R.L. did not admit prejudice, or "reveal a bias so strongly as to

convince the judge that the juror cannot render impartial jury service."*Brodnicki*, 516 F.3d at 574. Instead, R.L. had merely spoken to a correctional officer and had heard stories about "crazy" experiences at a correctional facility. The Court was satisfied that R.L. could put aside his previous experiences and any beliefs he may have acquired from his conversations with the correctional officer and serve as an impartial juror. This decision was based on R.L. expressing multiple times that he could be fair and impartial, recognizing that the Defendant is a correctional officer. Therefore, the Court was within its discretion for refusing to dismiss R.L. for cause.

### III. EVEN IF R.L. SHOULD HAVE BEEN REMOVED FOR CAUSE, HE DID NOT SERVE ON THE JURY AND PLAINTIFF SUFFERED NO HARM OR PREJUDICE.

Plaintiff argues that because R.L. should have been removed for cause, the use of a peremptory challenge to cure the Court's error constitutes a violation of Plaintiff's right to three peremptory challenges under 28 U.S.C. § 1870. Plaintiff used a peremptory challenge on R.L. As a result, he did not sit on the jury. Plaintiff does not contend that the final juror who sat was biased. The case before the Court is controlled by *Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013), which rejected a rule or statutory based claim of the sort Plaintiff is alleging. Jimenez brought suit against the City of Chicago for malicious prosecution and violation of due process. *Id*. at 710. A jury found in favor of Jimenez, and the trial judge denied defendants' motion for a new trial. Defendants then appealed. *Id.* On appeal, defendants argued, among other things, that the district court erred in not granting an additional peremptory challenge after the court erroneously sustained a *Batson* challenge which forced defendants to use a peremptory challenge to cure the court's alleged error. *Id.* The *Jimenez* court held that "[e]ven if the district court might have erred in sustaining Jimenez's *Batson* challenge … any error would have been harmless." *Id.* at 714. The *Jimenez* court relied mainly on *United States v. Martinez–Salazar,* 528 U.S. 304 (2000), in which "a criminal defendant was forced to use one of his peremptory challenges to cure the trial court's erroneous denial of a challenge for cause." *Jimenez*, 732 F.3d at 714. The *Martinez-Salazar* court explained that even if used to cure the trial judge's error, "[defendant] used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury." *Martinez-Salazar*, 528 U.S. at 316. Thus, having been tried "by a jury on which no biased juror sat," defendant could not "tenably assert any violation of his … right to due process." *Id*. at 307, 317. The *Jimenez* court also relied upon *Rivera v. Illinois*, 556 U.S. 148 (2009), where the Supreme Court affirmed *Martinez-Salazar* and extended this principle to a trial court's error in sustaining a *Batson* challenge. Plaintiff's attempt to distinguish the instant case from *Jimenez* because this case does not involve *Batson* challenges. However, *Jimenez* bases its decision on the ruling in *Martinez-Salazar*, which concerned challenges for cause. Whether stemming from sustaining an erroneous *Batson* challenge, or failure to dismiss a juror for cause, errors by the trial court are to be "assessed by inquiring whether the jury that actually decided the case was qualified and impartial." See *Id.* at 157-59; *Martinez-Salazar*, 528 U.S. 316-17; see also *Ross v. Oklahoma*, 487 U.S. 81, 91 (1988) (failure of trial court to remove juror for cause, with the result that defendant had to use a peremptory challenge to remove the juror, did not deprive defendant of right to impartial jury even though error changed composition of jury); *United States v. Polichemi*, 219 F.3d 698, 705-06 (7th Cir 2000). Therefore, "unless the defendants can show that a biased or otherwise

unqualified juror sat on the jury that rendered the verdict against them, any error in granting Jimenez's *Batson* challenge would have been harmless." *Jimenez*, 732 F.3d at 715. This is the case here: despite Plaintiff arguing that he "would have likely exercised his last peremptory challenge on the final juror" he cannot show any harm in the form of an unqualified or partial juror who actually decided the case. (Dkt. 116 at 15). In *Jimenez*, the defendants concede that that the jury who decided the case was not biased or other wise unqualified, but argued that the Seventh Circuit "should apply a different standard and reverse on the basis of the federal statutes and rules providing peremptory challenges." *Jimenez* 732 F.3d at 715. This is the same argument which Plaintiff now brings. He is asking the Court to grant a new trial in the absence of harm. While Plaintiff points to the Third Circuit's opinion in *Kirk v. Raymark Indus.*, 61 F.3d 147, 156 (3rd Cir. 1995) for support, the Seventh Circuit and the *Jimenez* court have rejected this argument.

> The fact that peremptory challenges in civil cases are based on a statute does not distinguish them from the right to peremptory challenges in the criminal context, which are granted by Federal Rule of Criminal Procedure 24(b) … *Martinez– Salazar* and *Rivera* cannot be distinguished based on the legal source of the right to exercise peremptory challenges, and a possible error in administering peremptory challenges that did not deny an impartial jury does not warrant a new trial.

*Jimenez*, 732 F.3d at 715-16. Therefore Plaintiff's attempts to distinguish the instant case based on differences in the source of the right to, and number of, criminal and civil peremptory challenges fails as well. Without a showing "that a biased juror sat on the jury … we must presume that [the party] received a fair trial." *Id*. at 716. Because Plaintiff has failed to show that any member of the jury who decided his case was unqualified or impartial, even if R.L. should have been removed for cause, any error that may have been occasioned by R.L. sitting on the jury would be harmless and Plaintiff is not entitled to a new trial.

## **CONCLUSION**

The Court allowed for adequate questioning of entire venire and Plaintiff has not established that the Court abused its discretion. Accordingly, in an exercise of its discretion, the Court denies the motion for a new trial.

Entered: July 29, 2015

_____
Iain D. Johnston
U.S. Magistrate Judge

9